UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Horizon III Real Estate,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Hartford Fire Insurance Company,

Defendant. Civ. No. 00-2420 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 20th day of December, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion for Summary Judgment. A Hearing on the Motion was conducted on October 26, 2001, at which time the Plaintiff Horizon III Real Estate ("Horizon") appeared by Michael T. Tierney, Esq., and the Defendant Hartford Fire Insurance Company ("Hartford") appeared by Mark S. Brown, Esq. For reasons which follow, we recommend that the Defendant's Motion for Summary Judgment be granted.

(18)

FILED DEC 20 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural Background

Horizon owns the Howard Terrace office building in Hibbing, Minnesota. On the night of July 4, 1999, a severe rainstorm hit the Hibbing area, causing a large amount of rain to fall. On the morning of July 5, 1999, Rolland Maki ("Rolland"), who is one of three partners owning Horizon, was advised by his brother that there was flooding at the Howard Terrace. When Rolland arrived at the building, he found six inches of water standing on the basement floor.

The course the water took before it arrived on the basement floor is disputed by the parties. Hartford asserts that the water backed up, into the basement, when it could not drain into the City's sewer system, which had been overwhelmed by the excessive rains. To support this assertion, Hartford has submitted the Affidavit of David Williams ("Williams"), a professional engineer who has been retained by Hartford. Williams, who investigated the cause of the flooding of the building, has concluded, in pertinent part, as follows:

> It is your affiant's opinion, to a reasonable degree of engineering certainty, that the Howard Terrace basement flooded because the excessive rain water draining from the roof was forced back up the vent stacks when the City's sewer and storm * * * system's capacity was exceeded by the volume of water from the storm.

Affidavit of David Williams, at ¶9.

Williams expressed this opinion, even though there was "little if any raw sewage" observed on the floor of the women's bathroom, from which the water was expelled, due to the fact that the bulk of water, that backed-up, would have been water that drained from the roof, and not from the sewer system. Id. at ¶11.

In contrast, after a similar investigation, Otto W. Maki ("Maki"), a professional engineer who was retained by Horizon, has expressed a different opinion. Maki believes that, due to the rainstorm, the pipes which drain the water from the Howard Terrace's flat roof, through the building's internal plumbing system, were unable to drain the water quickly enough and, consequently, filled with water, thereby creating a uniform pressure on the drain pipe surfaces below the roof. See, Affidavit of Otto W. Maki, at 2. The pressure created by the weight of water eventually blew the cap off the drain pipe's "clean out" fixture, which is located in the bathroom on the lower level of the building. Id. When the cap blew off, the water from the drain pipe spilled into the basement of the building. Id. Maki specifically rejects the suggestion that the water "backed-up" as, in his view, "[b]ack up means that water (or sewage) was traveling against the intended direction of water flow."[1] Id.

---

[1]As we noted, at the time of the Hearing, Maki does not sug-
(continued...)

Hartford now seeks Summary Judgment, claiming that the damage, which Holland Terrace sustained, was caused by water back-up as a result of excessive rain onto the roof of Horizon's building and, therefore, the applicable insurance coverage limited to $25,000.00, by virtue of the "Stretch Coverage," and, since it has already remitted that amount to Horizon, nothing further is owed, under the applicable insurance policy, as a matter of law. For its part, Horizon contends that this is not an incident of water back-up, under the language of the insurance policy, and as that term is employed by its consulting engineer, and therefore, the policy limit, upon which Hartford relies, should not apply.

II. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477

[1](...continued)
gest that he was employing a technical definition to the phrase "backed up," such that it is a term of art in his profession, and we find his definition tortured, at best. By analogy, if one were to inform Maki that traffic was "backed up" on a particular highway, he would envision that the vehicles were not static, in a traffic jam, but were proceeding in reverse -- in the opposite direction than was their usual course. To say that the definition is contrived, in order to reach a preferred result, seems obvious.

U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Krentz v. Robertson, 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved, and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy

Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. Ultimately, the parties' opposing arguments devolve to divergent interpretations of the applicable policy language. Under Minnesota law, which is applicable in this diversity action, it is settled that the interpretation of an insurance contract is a question of law. See, Winthrop and Weinstine, P.A. v. Travelers Cas. and Sur. Co., 993 F. Supp. 1248, 1254 (D. Minn. 1998)(applying Minnesota law); Watson v. United Services Automobile Ass'n, 566 N.W.2d 683, 688 (Minn. 1997); Meister v. Western Nat.

Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992); Glass Service Co. v. Progressive Specialty Ins. Co., 603 N.W.2d 849, 851 (Minn.App. 2000). In interpreting an insurance contract, the contract is to be construed as a whole, see, Watson v. United Automobile Ass'n, supra at 693; Henning Nelson Constr. Co. v. Fireman's Fund Amer. Life Ins. Co., 383 N.W.2d 645, 652 (Minn. 1986); Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977), and, when the language of the insurance policy is clear and unambiguous, the language employed must be given its usual and accepted meaning. See, Lobeck v. State Farm Mut. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998), citing Bobich v. Oja, 104 N.W.2d 19, 24 (Minn. 1960).

If an ambiguity in the language of an insurance contract exists, then the Court is obliged to construe the ambiguity against the insurer, and in favor of the insured. See, Noran Neurological Clinic v. The Travelers Indem. Co., 229 F.3d 707, 708 (8th Cir. 2000)(applying Minnesota law); American Commerce Ins. Brokers, Inc. Minnesota Mut. Fire and Cas. Co., 551 N.W.2d 224, 227 (Minn. 1996). The language of an insurance policy, however, is ambiguous only if it can reasonably be given more than one meaning. See, American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co., supra; General Mills, Inc. v. Gold Metal Ins. Co., 622 N.W.2d 147, 153 (Minn.App. 2001); Lhotka v. Illinois Farmers Ins. Co., 572

N.W.2d 772, 773 (Minn.App. 1998). In undertaking such an assessment, the Court must fastidiously guard against any invitation to "create ambiguities" where there are none. Noran Neurological Clinic v. The Travelers Indemnity Co., supra at 708 (applying Minnesota law). Nevertheless, "Minnesota courts have been quite clear that the initial existence of a contractual ambiguity does not 'ineluctably lead to the conclusion that the drafter is to lose.'" Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co., 967 F. Supp. 1148, 1154 (D. Minn. 1997), quoting Davis by Davis v. Outboard Marine Corp., 415 N.W.2d 719, 724 (Minn.App. 1987); see also, Sphere Drake Ins. PLC v. Trisko, 24 F. Supp.2d 985, 991 (D. Minn. 1998), aff'd, 226 F.3d 951 (8th Cir. 2000)(applying Minnesota law).

In sum, as explained by the Minnesota Supreme Court, in Jenoff, Inc. v. New Hampshire Ins. Co., 558 N.W.2d 260, 262 (Minn. 1997):

> In interpreting insurance contracts, we must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract. Minnesota Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179 (Minn.1990)(citing Dairyland Ins. Co. v. Implement Dealers Ins. Co., 294 Minn. 236, 244-45, 199 N.W.2d 806, 811 (1972)). "If the terms of an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning." Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130, 132 (Minn.1984)(citing Dairyland Ins., 294 Minn. at 244, 199 N.W.2d at 811). Ambiguous terms in an insurance contract are to be resolved against the insurer and in accordance

> with the reasonable expectations of the insured. Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 36 (Minn. 1979) (citations omitted). Ambiguity exists if the language of the policy is reasonably subject to more than one interpretation. Id. at 34. "However, a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage." Farkas v. Hartford Accident & Indem. Co., 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969)(citations omitted).

Applying these precepts, we turn to the policy language at issue here.

In relevant part, the applicable policy provisions state as follows:

> A. COVERAGE
>
> * * *
>
> 3. Covered Causes of Loss
>
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> a. Excluded in Section B., EXCLUSIONS; or
>
> b. Limited in Paragraph A.4, Limitations; that follow.
>
> 4. Limitations
>
> a. We will not pay for loss of or damage to:
>
> * * *
>
> (3) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters[.]

B. EXCLUSIONS

2. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * *

g. Water

* * *

(3) Water that backs up from a sewer or drain[.]

Exhibit A attached to Affidavit of Mark S. Brown.

Additionally, Horizon's policy secured "Stretch Coverage" for "back up of sewer or drain water damage." The Stretch Coverage provided as follows:

(9) Back up of Sewer or Drain Water Damage

We will pay for loss or damage to covered property caused by water that backs up from a sewer or drain. However, this Additional Coverage does not provide coverage for loss or damage due to water emanating from a sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface watcr.

> The most we will pay for direct physical damage is $25,000 at each described premises which is listed in the Declaration.

Id.

Given this language, Hartford contends that the damage to the Howard Terrace, regardless of the course that the water followed before it flowed onto the basement floor, was covered by virtue of the "Stretch Coverage" for "Back up of Sewer or Drain Water," which it has already paid to Horizon. Beyond that "Stretch Coverage," Hartford maintains that the policy language does not cover the loss Horizon sustained, because of the plain, and unambiguous language, of Limitation A.4.a(3).

Not surprisingly, Horizon disagrees, and claims that, under its version of the facts of the case, the incident producing the damage sustained does not comport with the common and ordinary meaning of the phrase "backs up," and that the damage does not fall under Limitation A.4.a(3), because the damage was not caused by "rain" -- the "rain" having stopped being "rain" when it touched the roof of Howard Terrace.[2] As a result, Horizon contends that

---

[2]According to Horizon, the exclusion for rain damage would have application only if the windows of Howard Terrace had been left open so as to allow rainwater to enter, causing damage to the interior of the complex. Again, the interpretation offered by Horizon is crafted to reach a desired end. As construed by Horizon, if rain were to be so torrential as to breach the roofing of Howard Terrace, there would be no exclusion for any resultant damage because the "rain" was converted to something other than (continued...)

there is a material question of fact as to the cause of the damage, thereby precluding a grant of Summary Judgment.

In view of the opposing opinions of the consulting engineers, one might envision a question of fact on the issue of causation. Such a vision is more apparent than real, however, for the divergent views of the experts, as to the precise course that the water followed before entering the basement of the Horizon complex, does not prevent a grant of Summary Judgment, since the difference in the views is not material. Simply put, irrespective of any opinion we might harbor, as to the course that the water pursued into the building, it remains clear, under the governing policy language, that the damage at issue was "caused by or result[ed] from rain," which is an occurrence that falls within the policy's limitations. Exhibit A, at A.4.a(3), attached to Affidavit of Mark S. Brown. Stated conversely, under the plain and unambiguous language of the policy, Horizon has recovered all of the insurance proceeds to which it is contractually entitled.

Neither Hartford, nor Horizon, dispute that the damage sustained by the Howard Terrace complex was caused by the excessive rainfall that occurred on the evening of July 4, 1999. In fact,

---

[2](...continued) "rain" once the rain penetrated the roofing of the building. We are not persuaded that such semantical contrivances have any substantive import under the governing rules of contractual construction.

Horizon's own expert states that "[w]e believe that the large amount of rain that fell in a short period of time caused the city storm sewer system to be filled to near capacity, slowing the drainage off the roof through the storm system." See, Letter from Otto W. Maki to James F. Clark, dated September 19, 2001, attached to Affidavit of Otto W. Maki. The insurance policy specifically disallows, however, any "loss of or damage to * * * [t]he interior of any building or structure caused by or resulting from rain" as a "covered cause of loss." Exhibit A, at A.4.a(3), attached to Affidavit of Mark S. Brown.[3] Clearly, even under Horizon's assessment of the circumstances, the damage was caused by, or resulted from, a torrential rain storm. Therefore, under the unambiguous language of the insurance policy, the damage is excluded, if it is not otherwise covered by the Stretch Coverage.

Horizon argues, however, that the damage was not due to rain, as the water "stopped being rain when it landed on the roof" for, "[a]fter it landed, it was just water." Plaintiff's Memorandum of Law Opposing Summary Judgment, at 4. For support, it cites two decisions for our consideration. Specifically, Horizon relies upon

---

[3]At the Hearing, Horizon did attempt to point to other portions of the policy which, it argued, would provide at least limited coverage under these circumstances, but each clause it highlighted was specifically limited to damages for "covered causes of loss," of which damage "caused by or resulting from rain" is not included.

the Wyoming Supreme Court's decision, in State Farm Fire and Cas. Co. v. Paulson, 756 P.2d 764 (Wyo. 1988), and the Nebraska Supreme Court's decision in Thorell v. Union Ins. Co., 492 N.W.2d 879 (Neb. 1992). In Paulson, the Wyoming Supreme Court rejected the Wyoming Court of Appeals' conclusion, that "rain does not become surface water immediately after it hits the ground; rather it remains 'rain' (a non-excluded peril)," stating as follows:

> "Rain" is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is "raining" although there may still be wet sidewalks and streets, puddles of water resulting from the rain, or water running through gutters and elsewhere as a result of the rain. It is not common or usual to say in such instances that it is still raining.

Id. at 767.

Subsequently, the Nebraska Supreme Court adopted this reasoning in Thorell. Thorell v. Union Ins. Co., supra at 883.

To the extent that these cases are instructive, they are inapposite. In both cases, the Courts were dealing with insurance policies which excluded damage caused by "surface water," but which covered damage caused by "rain," when the damage was due to "direct force of wind or hail damage[] * * * causing an opening in a roof or wall [which] the rain * * * enters through * * *." Id. at 882; see also, State Farm Fire and Casualty Co. v. Paulson, supra at

765.[4] The plaintiffs in both actions argued that, due to a rainstorm, coupled with hail or wind, breaches formed in the win-

---

[4]The policy language in Thorell, which mirrors the language in Paulson, is as follows:

> COVERAGE C -- PERSONAL PROPERTY
>
> We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in Section I -- Exclusions.
>
> * * *
>
> 2. Windstorm or hail.
>
> This peril does not include loss to the property contained in a building caused by rain * * * unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain * * * enters through this opening.
>
> SECTION I -- EXCLUSIONS
>
> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> * * *
>
> c. Water Damage, meaning:
>
> (a) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

Thorell v. Union Ins. Co., 492 N.W.2d 879, 882 (Neb. 1992); see also, State Farm Fire and Casualty Co. v Paulson, 756 P.2d 764, 765 (Wyo. 1988).

dows of their basements, thereby allowing water, which had already hit the ground, and pooled, to flow downwards, towards their homes, and into their respective basements. Thorell v. Union Ins. Co., supra at 881; State Farm Fire and Casualty Co. v. Paulson, supra at 764. Thus, they argued that the damage was caused by "rain" coupled with "the direct force of wind or hail," and not by "surface water." Both Courts rejected the argument, however, and concluded that the water was no longer considered "rain" when it caused the noted damage because, at that time, the rain had been converted into "surface water." Thorell v. Union Ins. Co., supra at 883-84; State Farm Fire and Casualty Co. v. Paulson, supra at 767-69.

In contrast, the policy exclusions here are quite different. We are not faced with the juxaposition of "rain" being a covered loss, and "surface water" being excluded from coverage, as was the circumstance in the cases on which Horizon relies. The limitation we confront states that the insurer "will not pay for loss of or damage to * * * [t]he interior of any building or structure caused by or resulting from rain." Exhibit A, at A.4.a(3), attached to Affidavit of Mark S. Brown. Given this limitation, we find more instructive the Nebraska Court of Appeals' decision in Einspahr v. United Fire & Cas. Co., 2000 WL 758654 (Neb.App. June 13, 2000) [unpublished opinion], where the applicable policy exclusion was

nearly identical to that here at issue.[5] In Einspahr, a "significant rainstorm" caused "[w]ater [to] leak[] through the roof of [the plaintiff's] restaurant," resulting in damage to the property. Id. at *1. The defendant denied the claim, however, and the Trial Court agreed, finding that the loss was attributable to rainwater which entered the building through the roof. Even though the plaintiff argued that the damage was not caused by rain, as the "water which entered his building [had] lost its nature as 'rain' once it entered the building," the Court did not accept such a "tortured reading of a clearly worded exception." Id. at *4. Rather, as the Court stated:

> [The plaintiff] does not deny that rain fell and that the water resulting from that rain, however characterized, entered the building. The policy excluded damage 'caused by or resulting from rain," which is precisely what happened in this case.

Id.

---

[5]The policy, in Einspahr, read as follows:

> 1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
>
> * * *
>
> c. The interior of any building or structure, or to personal property in the building or structure cause by or resulting from rain[.]

Einspahr v. United Fire & Cas. Co., 2000 WL 758654 at *4 (Neb.App. June 13, 2000) [unpublished opinion].

While the Court's decision, in Einspahr, is not precedential, we find its logic compelling, and we agree with that Court's ultimate conclusion.

Here, neither Horizon, nor Hartford, contest that the rain-storm was the precipitating cause of the damage to Howard Terrace. As we have noted, even Horizon's expert identified excessive rain as the cause of the slow-draining pipes which, in turn, caused the city's sewer, and storm system, to be overwhelmed, enhancing water pressures, in the interior plumbing of Horizon's building to be overwhelmed. Thus, the damage to Howard Terrace was "caused by or result[ed] from rain." Consequently, if the Stretch Coverage provision did not apply, as Horizon appears to strangely urge, then the damage at issue is not covered by the plain language of Horizon's insurance policy. Since Hartford has paid, to Horizon, the maximum amount of benefits which are owing under the Stretch Coverage, there is, as a matter of law, no further amount that Horizon can recover, under the applicable Hartford policy. Accordingly, we recommend that the Defendant's Motion for Summary Judgment be granted.

THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion for Summary Judgment [Docket No. 9] be GRANTED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than January 8, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 8, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.